**23JE-CC00393**

Electronically Filed - Jefferson - May 09, 2023 - 09:04 AM

IN THE
CIRCUIT COURT OF JEFFERSON COUNTY, MISSOURI

| | | |
|---|---|---|
| Christopher Prosser, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiffs. | ) ) | |
| Vs. | ) ) | No. |
| | ) | COMPLAINT CLASS ACTION |
| Glo Tanning Centers, Inc 3589 N. Shiloh Dr., Ste. 100 Fayetteville, AR 72703, | ) ) ) ) | Jury Trial Demanded |
| Glo Tanning Centers, Inc 12231 S. May Ave Oklahoma City, Mo. 73170;  and | ) ) ) ) | |
| John and Jane Does 1 through 3 Glo Tanning Centers, Inc 12231 S. May Ave Oklahoma City, OK. 73170, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## CLASS ACTION COMPLAINT

Plaintiff Christopher L. Prosser ("Chris Prosser" or "Plaintiff"), makes this complaint against Defendant's Glo Tanning Centers, Inc ("Glo"), an Arkansas and Oklahoma corporation, and as a registered foreign corporation in Arkansas, and John and Jane Does 1 through 3 (Telemarketers)(collectively, "Defendants"). Plaintiff's allegations as to his own actions are based on personal knowledge. The other allegations are based on his investigation, information, belief, and Glo Tanning's registered agent's prelitigation admissions.

1

Electronically Filed - Jefferson - May 09, 2023 - 09:04 AM

**Introduction**

1. Defendants operate within the personal tanning and massage industry. A critical part of Defendant's business is generating qualified leads through telemarketing campaigns promoting leads and tanning services through texting and random calls.

2. Defendants accomplish their telemarketing campaigns by making unsolicited robocalls (*i.e.*, using a predictive dialer and/or pre-recorded or artificial voice calls, and Automated Dialing Systems capable of storing Plaintiff's personal and private information and telephone number listed on the do not call registry) to residential cellular telephone numbers, without the prior express consent of the persons using or owning those cellular telephone numbers. In addition, Defendants make calls and texts to residential telephone numbers listed on the Missouri and National Do-Not-Call registry.

3. These practices violate the Missouri No Call Registry, Section 407 et seq., and the Telephone Consumer Protection Act (47 U.S.C. § 227)("TCPA"), as well as the Missouri Merchandising Practices Act, Section 407 et seq. The TCPA was enacted to protect consumers from intrusive automated telemarketing practices like robocalls and ATDS calls and texts made to Plaintiff and members of the Classes. By making these robocalls and ignoring the Missouri national Do-Not-Call registry, Defendants caused Plaintiff and members of the Classes actual harm, including the aggravation, nuisance, and invasion of privacy and right to seclusion that results from the receipt of unsolicited and harassing telephone calls/texts.

4. In response to Defendants' unsolicited telemarketing calls, Plaintiff filed the instant lawsuit and seeks an injunction requiring Defendants to cease all unsolicited telephone

Electronically Filed - Jefferson - May 09, 2023 - 09:04 AM

call/text activities and an award of statutory damages and treble damages to the members of the Classes under the Missouri No Call Registry and the TCPA, together with costs and reasonable attorneys' fees.

**Parties**

5.     Plaintiff Christopher Prosser is a natural person and a resident of Imperial, Missouri. At all relevant times Plaintiff was the sole user, subscriber, owner, and possessor of the residential cellular telephone number at issue.

6.     Defendant Defendant's Glo Tanning Centers, Inc ("Glo"), an Oklahoma corporation, and as a registered foreign corporation in Arkansas.

7.     Plaintiff is currently ignorant of the John and Jane Doe Defendants' true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants sued herein under the fictitious names John and Jane Doe's 1 through 3, inclusive, and therefore, sues such Defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to allege the true names and capacities of said fictitiously named Defendants when their true names and capacities have been ascertained. Plaintiff is informed, believes, and based thereon alleges that each of the fictitiously named Doe Defendants is legally responsible in some manner for the events and occurrences alleged herein, and for the damages suffered by Plaintiff.

8.     Plaintiff is informed and believes and based thereon alleges that all defendants, including the fictitious Doe Defendants, were at all relevant times acting as actual agents, conspirators, ostensible agents, partners and/or joint venturers and employees of all other Defendants, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, and joint venture, conspiracy, or enterprise, and with the express and/or implied permission, knowledge, consent, authorization, and ratification of their co-

Electronically Filed - Jefferson - May 09, 2023 - 09:04 AM

Defendants; however, each of these allegations are deemed "alternative" theories whenever not doing so would result in a contraction with the other allegations.

9.     All Defendants, including Does 1 through 3, are collectively referred to as "the Doe Defendants."

10.     Whenever this complaint refers to any act of Defendants, the allegations shall be deemed to mean the act of those defendants named in the particular cause of action, and each of them, acting individually, jointly and severally, unless otherwise alleged.

### Jurisdiction and Venue

11.     This Court has jurisdiction over the state claims, including the Missouri Merchandising Practices Act ("MMPA") and Missouri No Call List claims under Section 407 et seq., RSMo. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC,* 132 S. Ct. 740 (2012).

12.     The Court has personal jurisdiction over Defendants' because Defendant's principal place of business is within this District and/or Defendants conduct significant business transactions within this District, as well as make prohibited phone calls/texts into this District, as they did repeatedly with the Plaintiff.

13.     Venue is also proper before this Court under 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendants reside in this District and/or a substantial part of the events or omissions giving rise to the claim occurred in this District.

14.     All allegations in this complaint are based on information and belief and/or the documents and information currently available, and are such that additional evidentiary support and detail will be forthcoming after a reasonable opportunity for further investigation and discovery.

Electronically Filed - Jefferson - May 09, 2023 - 09:04 AM

<u>TCPA Background</u>

15.     In 1991 Congress enacted the TCPA to regulate explosive growth of the telemarketing industry. In so doing, Congress recognized that "[un]restricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. 102-243 § 2(5) (1991) (codified at  47 U.S.C. §227).

16.     The National Do Not Call Registry (the "Registry") allows consumers to  register their telephone numbers and  thereby indicate their desire not  to  receive telephone solicitations at those numbers. *See* 47 C.P.R. § 64.1200(c)(2).

17.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

18.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provide a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. 227(c) (5); 47 C.F.R. 64.1200 (c)(2).

**THE MISSOURI NO-CALL LAW**

19.     Similarly, the Missouri Do Not Call Registry, Mo. Rev. Stat. § 407.1098.1, which is to be construed in *pari materia*, provides:

> No person or entity shall make or cause to be made any telephone solicitation to the telephone line of any residential subscriber in this state who has given notice to the attorney general, in accordance with rules promulgated pursuant to section 407.1101 of the subscriber's objection to receiving telephone solicitations.

Electronically Filed - Jefferson - May 09, 2023 - 09:04 AM

20.     A "residential subscriber" is defined as, "a person who has subscribed to residential telephone service from a local exchange company or the other persons living or residing with such person." Mo. Rev. Stat. § 407.1095(2).

21.     A "telephone solicitation" is defined as "any voice communications over a telephone line from a live operator, through the use of ADAD equipment or by other means for the purpose of encouraging the purchase or rental of, or investment in, property, goods or services..." Mo. Rev. Stat. § 407.1095(3).

22.     Defendant's calls and/or texts to a telephone subscriber on the Missouri Do Not Call List is an unfair practice, because it violates public policy, and because it forced Plaintiff to incur time and expense without any consideration in return. Defendants' practice effectively forced Plaintiff to listen to or read Defendants' advertising campaigns.

23.     Defendants violated the unfairness predicate of the Act by engaging in an unscrupulous business practice and by violating Missouri statutory public policy, which public policy violations in the aggregate caused substantial injury to hundreds of persons.

24.     Defendants' actions prevented the Plaintiff's telephone from being used for other legitimate purposes during the time Defendant was occupying the Plaintiff's telephone for Defendants' unlawful purpose.

25.     Chapter 407.1107 provides for up to $5,000 in damages for each knowingly violation.

**THE MISSOURI TELEMARKETING LAW**

26.     Mo. Rev. Stat. § 407.1076 provides in pertinent part:

It is an unlawful telemarketing act or practice for any seller or telemarketer to engage in the following conduct:

(3)     Cause the telephone to ring or engage any consumer in telephone

6

Electronically Filed - Jefferson - May 09, 2023 - 09:04 AM

conversation repeatedly or continuously in a manner a reasonable consumer would deem to be annoying, abusive or harassing;

(4)   Knowingly and willfully initiate a telemarketing call to a consumer, or transfer or make available to others for telemarketing purposes a consumer's telephone number when that consumer has stated previously that he or she does not wish to receive solicitation calls by or on behalf of the seller unless such request has been rescinded.

27.   MO Rev. 407.1104 provides in pertinent part:

1.   Any person or entity who makes a telephone solicitation to any residential subscriber in this state shall, at the beginning of such solicitation, state clearly the identity of the person or entity initiating the solicitation.

2.   No person or entity who makes a telephone solicitation to a residential subscriber in this state shall knowingly use any method to block or otherwise circumvent any subscriber's use of a caller identification service.

## Intradistrict Assignment

28.   A substantial part of the events which give rise to the claim occurred in Imperial, Missouri. Therefore, under Local Rule, this civil action should be assigned to the Circuit Court of Jefferson County, Missouri. In the event the Defendants seek to remove this case to federal Court, the appropriate venue lies in the St. Louis Division of the United States District Court for the Eastern District of Missouri.

## Common Factual Allegations

29.   Defendant Glo Tanning, operating under the direct supervisory control of Defendant's corporate officers represent that it is the largest tanning and spa center in the United States. The defendants develop, own, manage, vet, and pursue leads, which they secrete in clandestine form and fashion, to hide their deceptive marketing tactics.

30.   Defendant Glo and the Doe Defendants promote lead generation and telemarketing services directly for themselves by falsely indicating to consumers that they have

Electronically Filed - Jefferson - May 09, 2023 - 09:04 AM

existing accounts with Defendant Glo, when they have never had a relationship with Defendant Glo, and that they need to update their payment information for their memberships.

31.     Lead generation and telemarketing firms, including Defendant Glo, utilize telemarketing within their marketing and sales process to effectively promote their products and services to potential customers and close deals or allow their Company to close deals. In fact, telemarketing and lead generation is a critical part of the tanning industry: converting a lead into a direct transfer to a Glo representative, a customer typically requires multiple calls/texts from a salesperson to the lead (consumer), often to persons listed on the Missouri and Federal do not call registry without their express written consent.

32.     Defendant's John and Jane Doe Telemarketers, then convert leads into sales by immediately contacting the prospective clients and doing so repeatedly over the course of the next few days, weeks or months, including citizens clearly listed on the do not call registry.

33.     Defendants make the above-described lead generation calls, including the calls made to Plaintiff and Class Members, en masse using a "predictive" dialer, and ATD system which automatically places calls/texts without human intervention until the called party answers the call, at which time the automatic dialer attempts to connect the called party with a human representative or an automated prompt.

34.     Defendants Glo and their Doe Telemarketers did not obtain prior express written consent from Plaintiffs' and Class Members prior to making those calls and texts.

**Plaintiff's Individual Allegations**

35.     Beginning on January 1, 2023, Plaintiff received numerous telephone calls and/or automated texts to his personal residential cell phone from Defendants or their agents, which the Plaintiff personally listed on the Missouri and Federal do not call registries in February, 2022.

Electronically Filed - Jefferson - May 09, 2023 - 09:04 AM

These calls all originated from the same number with an Arkansas area code – but each telemarketer identified themselves as an agent, employee or vendor of Defendant Glo Tanning. These calls are detailed as:

|   |   |   |   |
|---|---|---|---|
| a. | 1/1/2023 | 1:39 pm | (479) 888-8293 |
| b. | 1/2/2023 | 3:33 pm | (479) 888-8293 |
| c. | 1/2/2023 | 3:42 pm | (479) 888-8293[1] |
| d. | 2/1/2023 | 1:45 pm | (479) 888-8293 |
| e. | 2/1/2023 | 5:41 pm | (479) 888-8293 |
| f. | 2/2/2023 | 6:54 pm | (479) 888-8293 |

36.     On some of the occasions when Plaintiff answered his cell phone, he heard several digital "clicks," a pause, and then a unintelligible sound on the phone. At times, Plaintiff was unable to determine if the voice was artificial or live voice, and Plaintiff received automated texts from an ATDS.

37.     Although the Defendants circumvented the caller identification features so the Plaintiff could not identify them, the caller identified herself/himself as calling/texting from Glo Tanning and then, in a generic or scripted fashion, proceeded to promote GLO products and services to generate Plaintiff's personal credit card information.

38.     During these calls, Plaintiff instructed Defendants to stop calling, he was busy, and the telemarketer was interrupting him during work, and further advised Defendants that his cellular telephone number was on the "Missouri State and National Do-Not-Call registry."

---

[1] The defendants were served with a copy of the proposed lawsuit in this case on January 20, 2023 via certified mail No. 7022041000011758 3087 , yet continued to text the Plaintiff's private cell phone number on three additional occasions although being formally notified they were acting in violation of the Federal and State do not call registries.

Electronically Filed - Jefferson - May 09, 2023 - 09:04 AM

39.     Despite Plaintiff's efforts to cease Defendants' calls/texts, informing them he was on the do not call registries, Plaintiff continued to receive unsolicited calls/texts from Defendants.

40.     Prior to the calls, Plaintiff had no contact with Defendants and did not consent to receive these telephone calls/texts to his private residential cellular telephone.

41.     Plaintiff was damaged by Defendants' numerous calls/texts. He found these repeated unsolicited calls/texts to be intrusive, annoying, and harassing, as they diverted attention away from his work and other daily activities and violated his absolute right to privacy and seclusion.

42.     Plaintiff placed himself on the Missouri State and national Do-Not-Call registry specifically to avoid telemarketing calls and texts. Plaintiff's privacy was invaded when he received repeated calls from Defendant's Glo and Does 1 through 3, all due to the policies personally promulgated, enforced and ratified by their Corporate Officers.

43.     Defendants made, and continue to make, these telemarketing calls and texts to individuals nationwide without their prior written express consent to do so and without scrubbing the numbers under the State and Federal DNC's.

44.     During the calls, there was a significant pause before Defendants' representative started speaking/texting, which is a telltale sign that Defendants used a predictive dialer to make the call:

> Predictive dialers initiate phone calls while telemarketers are talking to other consumers . . . In attempting to "predict" the average time it takes for a consumer to answer the phone and when a telemarketer will be free to take the next call, predictive dialers may either "hang-up" on consumers or keep the consumer on hold until connecting the call to a sales representative, resulting in what has been referred to as "dead air."

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of*

Electronically Filed - Jefferson - May 09, 2023 - 09:04 AM

*1991, 2003 Report and Order*, CG Docket No. 02-278, FCC 03-153, ¶ 146, 18 FCC Rcd. 14014, 14101, 2003 WL 21517853, *51 (July 3, 2003), *available at* http://hraunfoss.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf ("*2003 Report and Order*").

45.     Defendants placed some or all calls/texts alleged in this complaint with one or more predictive dialers. Predictive dialers constitute an automatic telephone dialing system; they are capable of storing, producing, and dialing any telephone number, and are capable of storing, producing, and dialing telephone numbers using a random or sequential number generator. Further, no human manually entered Plaintiff and Class members' cellular telephone number when Defendants made the calls and texts alleged supra. Rather, the predictive dialer(s) electronically dialed Plaintiff and Class members' cellular telephones in an automated fashion. The predictive dialers otherwise constitute an "automatic telephone dialing system" under the meaning of 47 U.S.C. § 227(a)(1).

46.     None of the telephone calls alleged in this complaint constituted calls for emergency purposes as defined by 47 U.S.C. § 227 (b)(1)(A)(i).

47.     Plaintiffs' privacy and right to seclusion has been violated by the above-described telemarketing calls, and he has suffered anxiety, stomach pains, a severe loss of sleep and has been harassed and humiliated by the calls, and Glo Tanning's registered agent, they have violated his right to seclusion, and has suffered an inability to maintain seclusion and privacy.

48.     The Plaintiff never provided his written consent or requested these calls or texts.

Electronically Filed - Jefferson - May 09, 2023 - 09:04 AM

49.     Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendants and their deceptive marketing practices because their privacy and rights to seclusion have been violated, they were annoyed and ·harassed and suffered other injuries listed infra.

50.     In addition, the calls occupied their telephone lines, rendering them unavailable for legitimate communication interfering with both work and Plaintiff's personal family time.

51.     After a myriad of calls/texts were placed to Plaintiff's personal cell phone, he advised Glo Tanning Registered agent and attorney Eric Cavett that Defendant Glo Tanning Inc, was calling and texting his personal cell phone in violation of the Missouri and Federal do not call registries.

52.     In response, Attorney Cavett threatened the Plaintiff's personal liberty to deter and chill his absolute right to proceed with litigation to seek the vindication of his rights for Defendant Glo's violations of the do not call registries and the MMPA.

53.     In good faith, the Plaintiff responded to Attorney Cavett that he should focus on the transgression of the rights violated by Defendant Glo Tanning and to cease character attacks.

54.     Registered Agent and Attorney Cavett next threatened that he would seek criminal charges through the federal authorities if the Plaintiff did not cease and desist any efforts to litigate these clear and flagrant violations of his state and federal rights.

Electronically Filed - Jefferson - May 09, 2023 - 09:04 AM

55.    As a licensed attorney and an officer of the Court in the State of Oklahoma, Cavett's threats on the Plaintiff's personal liberty violate the Plaintiff's civil rights and protections under the Civil Rights Act of 1964, and 42 U.S.C. 1983, and 2000.[2]

A.    **The Missouri Merchandising Practices Act**

56.    The Plaintiff realleges and incorporates the above paragraphs as if fully set forth herein.

57.    Section 407.020, RSMo provides in pertinent part:

The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale *or advertisement* of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section 407.453, in **or from** the state of Missouri, is declared to be an unlawful practice… Any act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale, advertisement, or solicitation.

58.    Section 407.025.1 provides in pertinent part:

Any person who purchases or leases merchandise primarily for any personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020 may bring a private civil action in either the circuit court of the county in which the seller or lessor resides or in which the transaction complained of took place, to recover actual damages. The court may, in its discretion, award punitive damages and may award to the prevailing part attorney's fees, based on the amount of time reasonably expended, and may provide such equitable relief as it deems necessary or proper.

59.    Section 407.010(4) defines "merchandise" as any objects, wares, goods, commodities intangibles, real estate, or services. This definition of merchandise includes the

---

[2] See ***Smith v. Pace***, 313 S.W.3d 124 (Mo. S.Ct. 2010), this is in the least, an appearance of impropriety and, at most, a *127 conspiracy by these officers of the court to threaten, instill fear and imprison innocent persons to cover-up and chill public awareness of their own apparent misconduct using the power of their positions to do so."

Electronically Filed - Jefferson - May 09, 2023 - 09:04 AM

services advertised and sold by Defendant's Glo and Does 1 through 3 and its employees, vendors, and/or agents.

60.    Pursuant to authority granted it in §407.145, the Attorney General has promulgated rules explaining and defining terms utilized in §407.020 of the Merchandising Practices Act. Said rules are contained in the Missouri Code of State (hereinafter "CSR"). The rules relevant to the Merchandising Practices Act allegations herein include, but are not limited to, the provisions of the CSR.

61.    15 CSR 60-8.010 provides the following definitions:

(1)(B) Consumer shall include any person (as defined in section 407.010.5RSMo) who purchases, may purchase, or is solicited for purchase of merchandise. (1)(E) Good faith shall mean honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade. 15 CSR 60-8.020 provides that:

An unfair practice is any practice which-

(A) Either-

1. Offends **any public policy as it has been established by the Constitution, statutes or common law of this state, or by the Federal Trade Commission, or its interpretive decisions**; or

2. Is unethical, oppressive, or unscrupulous; and

(B) Presents a risk of, or causes, substantial injury to consumers.

62.    15 CSR 60-8.040 provides that:

(1) It is an unfair practice for any person in connection ***with the advertisement*** or sale of merchandise to violate the duty of good faith in solicitation, negotiation and performance, or in any manner fail to act in good faith.

63.    15 CSR 60-8.090 provides that:

(1) It is an unfair practice for any person in connection with the advertisement

Electronically Filed - Jefferson - May 09, 2023 - 09:04 AM

or sale of merchandise to engage in any method, use or practice which-
      (A) **Violates state or federal law intended to protect the public**; and
      (B) Presents a risk of or causes substantial injury to consumers.

64.     15 CSR 60-9.010 provides that:

(1)(C) Material fact is any fact which a reasonable consumer would likely consider to be important in making a purchasing decision, or which would be likely to induce a person to manifest his/her assent, or which the seller knows would be likely to induce a particular consumer to manifest his/her assent, or which would belikely to induce a reasonable consumer to act, respond or change his/her behavior in any substantial manner.

65.     15 CSR 60-9.020 provides that:

(1) Deception is any method, act, use, practice, advertisement or solicitation that has the tendency or capacity to mislead, deceive or cheat, or that tends to create a false impression.

(2) Reliance, actual deception, knowledge of deception, intent to mislead or deceive, or any other culpable, mental state such as recklessness or negligence negligence are not elements of deception as used in section 407.020.1, RSMo… ***Deception may occur in securing the first contact with a consumer and is not cured even though the true facts or nature of the advertisement of offer for sale are subsequently disclosed***. (Our *emphasis*)

(1)(B) Consumer shall include any person (as defined in section 407.010.5RSMo) who purchases, may purchase, or is solicited for purchase of merchandise. (1)(E) Good faith shall mean honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade.

66.     15 CSR 60-8.020 provides that:

An unfair practice is any practice which-

(A) Either-

1. Offends any public policy as it has been established by the Constitution, statutes or common law of this state, or by the Federal Trade Commission, or its interpretive decisions; or

2. Is unethical, oppressive, or unscrupulous; and

(B) Presents a risk of, or causes, substantial injury to consumers.

(1)(E) Good faith shall mean honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade.

Electronically Filed - Jefferson - May 09, 2023 - 09:04 AM

67.    15 CSR 60-9.030 provides that:

(1) It is deception for any person in any advertisement or sales presentation to use any format which because of its overall appearance had the tendency or capacity to mislead consumers.

68.    15 CSR 60-9.060 provides that:

(1) False promise is any statement or representation which is false or misleading as the maker's intention or ability to perform a promise, or likelihood the promise will be performed.
(2) Reliance and injury are not elements of false promise as used in section 407.20.1, RSMo.

69.    15 CSR 60-9.070 provides that:

(1) A misrepresentation is an assertion that is not in accord with the facts.
(2) Reliance, knowledge that the assertion is false or misleading, intent to defraud, intent that the consumer rely upon the assertion, or any other culpable [capable in origin] mental state such a recklessness or negligence, are not elements of misrepresentation as used in section 407.020.1.

70.    15 CSR 60-9.080 provides that:

(1) It is a misrepresentation for any person in connection with the ***advertisement*** or sale of merchandise to omit to state a material fact necessary in order to make statements made in light of the circumstances under which they are made, not misleading.

71.    15 CSR 60-9.110 provides that:

(1) Concealment of a material fact is any method, act, use or practice which operates to hide or keep material facts from consumers.
(2) Suppression of a material fact is any method, act, use of practice which is likely to curtail or reduce the ability of consumers to take notice of material facts which are stated.
(3) Omission of a material fact is any failure by a person to disclose material facts know to him/her, or upon reasonable inquiry would be known to him/her.
(4) Reliance and intent that others rely upon such concealment, suppression or omission are not elements of concealment, suppression or omission as used in section 407.020.1.

72.    Pursuant to § 407.020 RSMo (Missouri Merchandising Practices Act), it is an

unlawful practice to use deception, fraud, false pretense, false promise, misrepresentation, or unfair

Electronically Filed - Jefferson - May 09, 2023 - 09:04 AM

practice, or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise in trade or commerce.

73.    Defendant's Glo and Does 1 through 3, and its employees and/or agents, used deception, fraud, false pretense, false promise, misrepresentation, or unfair practice, or concealed, suppressed, or omitted a material facts in connection with the unwanted solicitations made to his number listed on the do not call registry and tanning sales by engaging in the following:

a.    Defendant's Glo and Does 1 through 3, and its employees and/or agents and other unknown telemarketers acting on their behalf, by and through the aid and assistance of telemarketers, as created and marketed by these Defendants through the aid, assistance and use of predictive dialers, robo-calls and ATDS dialing systems owned and operated by the collective Defendant's to facilitate unsolicited calls to the DNC, MDNC, and ATDS classes, with the specific intent to deceive persons on the no call list to believe that they would not receive telemarketing calls and were merely being invited to enter their credit card to pay an existing bill for services.

b.    By falsely and deceptively misidentifying both the caller ID functions and lead paradigm, Defendant's Glo and Defendant's Doe 1 through 3, and their telemarketers identity and their company origin to deliberately misrepresent that they were telemarketers acting as an agent and/or vendor on Defendant's Glo and its employees and/or agents and other unknown telemarketers acting on their behalf in an effort to mislead the Plaintiff into the disclosure of his personal and private information, when he might not otherwise have considered such disclosure to a third party and/or vendor.

17

Electronically Filed - Jefferson - May 09, 2023 - 09:04 AM

c.      By deceptively and deliberately concealing company identities throughout the myriad calls to dissuade consumers and persons on the federal and Missouri State no call lists from pursuing lawful claims under the TCPA, MMPA and Missouri no call registry for knowingly deceptive marketing practices.

d.      By then having a meeting of the minds and agreeing to illegally provide Plaintiffs phone number, thereafter, providing it to countless other telemarketers so they could illegally call or text Plaintiff's phone, clearly registered on the no call lists, although Plaintiff did not have a relationship with those Defendants and did not provide those Defendants with written permission to call him

e.      By badgering the Plaintiff with myriad unwanted telemarketer solicitations by phone and text for Defendant Glo's telemarketers services, when all he sought, and believed he would receive, was an anonymous right to privacy and seclusion.

f.      For Defendant's Glo to hire other marketing Defendants, who they knew or reasonably should have known were providing restricted numbers and making calls to the 244.3 million people listed on the federal and Missouri State do not call registry in an effort to conceal the identity of the telemarketers, and provide the Defendants with a false and misleading façade of plausible deniability, when they are 100% culpable and funded the illegal calls and texts to the Plaintiff and others similarly situated on the federal no call registry.

g.      By "spoofing" area codes  and utilizing Voip numbers to show as a local area code to increase the likelihood that the Plaintiff would believe that it was a local call for legitimate purposes, instead of an unsolicited marketing or solicitation call from Defendant Glo and its telemarketers and its employees and/or agents, vendors and other

Electronically Filed - Jefferson - May 09, 2023 - 09:04 AM

unknown telemarketers acting on their behalf by and through the aid and assistance of the robo-call and ATDS dialing systems.[3]

h.    As a direct result of the deception, false pretense, misrepresentation, unfair and fraudulent practices, concealment, and omission of these material facts of Defendant's Glo and their telemarketers and its employees and/or agents and other unknown telemarketers acting on their behalf, by and through the aid and assistance of the robo-call and ATDS dialing systems, the Plaintiff has suffered continuing harassment, humiliation, loss of sleep, depression, mental fatigue, a reprimand from his employer and loss of thousands of dollars in bonus opportunities, injuries to his privacy rights, intrusion upon seclusion, his mental health and wellbeing, inability to use his phone and other damages, caused frustration, harassment and annoyance, thereby warranting treble and punitive damages.[4]

i.    By continuing to repeatedly text the Plaintiff after being informed that he was on the Missouri and Federal No Call registries, and deliberately violating his protections

---

[3] Telemarketers cause a local number to appear on the recipients' caller ID in order to deceptively increase the likelihood that the recipient will pick up the call. For example, Velocify, offers automated outbound dialer software that gives users the ability to "[o]perate like a local business and boost contact rates by calling prospects from their own area code." *See* http://pages.velocify.com/rs/522-DJL-243/images/velocify-pulsecommunication.

[4] These injuries violated the Plaintiff's substantive rights. In *Romero v. Department Stores National Bank*, the harms the plaintiff alleged, such as headaches, sleeping issues, and weight loss, were "divorced from the alleged violation of the TCPA." 199 F.Supp.3d 1256, 1265 (S.D. Cal. 2016). By contrast, *Greenley's* amended complaint alleges that the unsolicited communications caused him frustration and annoyance and resulted in lost time and the temporary loss of utility of his cellular telephone. The circumstances in *Romero* are inapposite here. In summary, *Greenley* allegedly received multiple unsolicited automated communications from LIUNA. *Greenley* has alleged conduct that violated his substantive right, established by the TCPA, to be free from the invasion of privacy and intrusion upon seclusion caused by unsolicited automated communications. This injury is neither hypothetical nor uncertain, and it demonstrates a harm or, at a minimum, a material risk of harm that is not merely a procedural violation. For these reasons, the Court found that *Greenley* has Article III standing and denies LIUNA's motion to dismiss on this ground.

Electronically Filed - Jefferson - May 09, 2023 - 09:04 AM

under both those state and federal Acts and statutes even after being advised in writing that he demanded the communications cease forthwith.[5]

j.       By depriving the Plaintiff of the temporary use of his phone/utility, and causing wear and tear on his equipment and the degradation of his battery life and causing him to incur provider fees for the calls.

## Class Certification Allegations

---

[5] Even though *Ginwright* initially consented to autodialed calls to his cell phone about his car loan, *Ginwright* asserts that he later revoked that consent. The FCC has ruled that under the TCPA, "a called party may revoke consent" to autodialed phone calls "at any time and through any reasonable means." In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991 ("2015 FCC Ruling"), 30 FCC Rcd. 7961, 7993 (2015). This right to revoke is premised on the common law understanding of the meaning of "consent," which is voluntarily given and can be voluntarily taken away. *See Osorio v. State Farm Bank, FSB*, 746 F.3d 1242, 1255–56 (11th Cir. 2014) (finding that express consent may be revoked and that there was a genuine issue of material fact on whether the plaintiff revoked consent); *Gager v. Dell Fin. Serv.*, 727 F.3d 265, 270–71 (3d Cir. 2013) (holding that the TCPA allows consumers to revoke prior express consent); 2015 FCC Ruling at 7994. Moreover, as a remedial statute, the TCPA should be construed to benefit consumers. *Gager*, 727 F.3d at 271. A consumer may revoke consent by "any reasonable method including orally or in writing." 2015 FCC Ruling at 7996. Courts have applied this right in the context of consent given through a credit application, *Gager*, 727 F.3d at 267, and through an application for insurance, *Osorio*, 746 F.3d at 1247. Ginwright was therefore permitted to revoke his consent to Exeter's phone calls even though he had earlier granted it by providing his cell phone number in the Credit Application. Exeter, however, argues that Ginwright had also consented to autodialed calls through a consent clause in the Credit Application, and that such consent was bargained-for consideration as part of a contract between Ginwright and Exeter and thus cannot be revoked. As support, Exeter cites *Reyes v. Lincoln Automotive Financial Services*, 861 F.3d 51 (2d Cir. 2017), in which the United States Court of Appeals for the Second Circuit held that the TCPA did not allow for revocation of consent when that consent "was included as an express provision of a contract." *Id.* at 57. Such a prohibition on later revocation of consent arising from a boilerplate consent provision, however, would be inconsistent with the FCC's ruling that a consumer has "a right to revoke consent," 2015 FCC Ruling at 7996, including when originally provided in a credit application, *id.* at 7993 n.216, and with the remedial purposes of the TCPA, *see Gager*, 727 F.3d at 271. The Court therefore declines to adopt the prohibition on revocation in *Reyes*, which would result in the effective circumvention of the TCPA in the debtor-creditor context. Indeed, Exeter itself has acknowledged that "[c]onsent under the TCPA is not a matter of contract, nor subject to contract principles." Opp'n Mot. Class Certification at 15, ECF No. 65.

Electronically Filed - Jefferson - May 09, 2023 - 09:04 AM

74.     Class Definition: As authorized by Missouri Supreme Court Rule 52.08 and

Federal Rule 23(b)(2) or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this

action on behalf of a class of all other persons or entities similarly situated throughout the United

States for the following Classes:

**Robocall Class and Automatic Telephone Dialing System Class:**

All persons in the United States who received any unsolicited
telephone calls from Defendants or their agents on their cellular
phone service through the use of any automatic telephone dialing
system or artificial or pre-recorded voice system, which telephone
calls by Defendants or their agents were not made for emergency
purposes or with the recipients' prior express consent, within four
years prior to the filing of this Complaint.

**Do Not Call Class ("DNC Class")**:
All persons in the United States (1) who had his or her telephone
number(s) registered with the national Do-Not-Call registry for at
least thirty days; (2) who received more than one telephone call
made by or on behalf of Defendants that promoted tanning
products or services; (3) within a 12-month period; and (4) for whom Defendants had no
current record of consent to place such calls to him or her.

**Missouri Do Not Call Class ("MDNC Class")**:
All persons in the State of Missouri (1) who had his or her telephone
number(s) registered with the Missouri Do-Not-Call registry for at
least thirty days; (2) who received more than one telephone call or text.

75.     Excluded from the Classes are Defendants, any entity in which Defendants have a

controlling interest or which has a controlling interest in Defendants, and Defendants' agents,

legal representatives, predecessors, successors, assigns, and employees. Also excluded from the

Classes are the judge and staff to whom this case is assigned, and any member of the judge's

immediate family. Plaintiff reserves the right to revise the Class definitions based on facts

learned during discovery. Plaintiff is a member of each Class.

76.     Class Numerosity: The exact number of members of each Class is unknown and is

not available to Plaintiff at this time, but such information is readily ascertainable by Defendants

Electronically Filed - Jefferson - May 09, 2023 - 09:04 AM

and their agents. The Classes are so numerous that joinder of all members is impractical. Plaintiff alleges that there are more than 40 members of each Class.

77.     Class Commonality: Common questions of fact and law exist as to all members of the Classes and predominate over the questions affecting only individual members of the Classes. Identification of the individuals who qualify as a member of the Class will be sufficient to establish liability to the Class member. The predominant common questions include:

a.     Whether Defendants used an "automatic telephone dialing system" or "artificial or prerecorded voice" calls as such terms are defined or understood under the TCPA and applicable FCC regulations and orders;

b.     Whether Defendants had written prior express consent to call/text Class members;

c.     Whether Defendants systematically made telephone calls/texts to members of the DNC Class whose telephone numbers were registered with the Missouri and national Do-Not-Call registry;

d.     Whether Defendants systematically made telephone calls to members of the DNC Class where Defendants did not have a current record of consent to make such telephone calls;

e.     Whether the Defendants deliberately and maliciously continued to call/text the Plaintiff's personal cell number listed on the Missouri and Federal Do Not call registries after being advised in writing and via certified mail to cease their illegal calls/texts.

f.     Whether Plaintiff and Class Members are entitled to damages, including whether Defendants' violations were performed willfully or knowingly such that Plaintiff and Class Members are entitled to treble damages; and

Electronically Filed - Jefferson - May 09, 2023 - 09:04 AM

g.      Whether Plaintiff and Class Members are entitled to injunctive relief for violations of their privacy and attorney's fees and costs.

78.     Typicality: Plaintiff's claims are typical of the claims of the other members of the Classes. Plaintiff is not different in any relevant way from any other member of the Classes, and the relief he seeks is common to each Class.

79.     Adequate Representation: Plaintiff will fairly and adequately represent and protect the interests of the other members of the Classes: his interests do not conflict with their interests. Plaintiff has retained counsel competent and experienced in complex class actions, including class actions arising under the Telephone Consumer Protection Act, and they intend to prosecute this action vigorously.

80.     Predominance and Superiority: The Classes alleged in this Complaint are appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The damages suffered by each individual member of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. It would be virtually impossible for Class members to individually obtain effective relief from Defendants' misconduct. Even if Class members themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, class actions present far fewer management difficulties and provide the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

Electronically Filed - Jefferson - May 09, 2023 - 09:04 AM

81.     Generally Applicable Policies: This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each Class a whole. The policies of the Defendants challenged herein apply and affect members of each Class uniformly, and Plaintiff's challenge of these policies hinges on Defendants' conduct, not on facts or law applicable only to Plaintiff.

82.     Injunctive Relief is Appropriate: Based on information and belief, Defendants continue to engage in the improper practices discussed above. Injunctive relief is necessary and appropriate to enjoin Defendants' conduct and to prevent irreparable harm to Plaintiff and Class members for which they have no adequate remedy at law.

**COUNT I**
**Violations of the MDNC Against All Defendants**
**by Plaintiff Individually and on Behalf of the MDNC Class**

83.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint. Plaintiff asserts this claim on behalf of himself and members of the Missouri Do Not Call Registry Class.

84.     The Missouri Do Not Call Registry, Mo. Rev. Stat. § 407.1098.1, provides:

> No person or entity shall make or cause to be made any telephone solicitation to the telephone line of any residential subscriber in this state who has given notice to the attorney general, in accordance with rules promulgated pursuant to section 407.1101 of the subscriber's objection to receiving telephone solicitations.

85.     A "residential subscriber" is defined as, "a person who has subscribed to residential telephone service from a local exchange company or the other persons living or residing with such person." Mo. Rev. Stat. § 407.1095(2).

Electronically Filed - Jefferson - May 09, 2023 - 09:04 AM

86.     A "telephone solicitation" is defined as "any voice communications over a telephone line from a live operator, through the use of ADAD equipment or by other means for the purpose of encouraging the purchase or rental of, or investment in, property, goods or services..." Mo. Rev. Stat. § 407.1095(3).

87.     Defendant's Glo and Does 1 through 3 and their telemarketers calls/texts to a telephone subscriber on the Missouri Do Not Call List is an unfair practice, because it violates public policy, and because it forced Plaintiff to incur time and expense without any consideration in return. Defendants' practice effectively forced Plaintiff to listen/read Defendants' advertising campaign.

88.     Defendant's Glo and Does 1 through 3 and their telemarketers violated the unfairness predicate of the Act by engaging in an unscrupulous business practice and by violating Missouri statutory public policy, which public policy violations in the aggregate caused substantial injury to hundreds of persons.

89.     Defendants' actions prevented the Plaintiff's private residential telephone from being used for other legitimate purposes during the time Defendant was occupying the Plaintiff's telephone for Defendants' unlawful purpose.

90.     Chapter 407.1107 provides for up to $5,000 in damages for each knowingly violation.

91.     Mo. Rev. Stat. § 407.1076 provides in pertinent part:

It is an unlawful telemarketing act or practice for any seller or telemarketer to engage in the following conduct:

(3)     Cause the telephone to ring or engage any consumer in telephone conversation repeatedly or continuously in a manner a reasonable consumer would deem to be annoying, abusive or harassing;

(4)     Knowingly and willfully initiate a telemarketing call to a consumer, or transfer or make available to others for telemarketing purposes a

25

Electronically Filed - Jefferson - May 09, 2023 - 09:04 AM

consumer's telephone number when that consumer has stated previously that he or she does not wish to receive solicitation calls by or on behalf of the seller unless such request has been rescinded.

92.     MO Rev. 407.1104 provides in pertinent part:

1.     Any person or entity who makes a telephone solicitation to any residential subscriber in this state shall, at the beginning of such solicitation, state clearly the identity of the person or entity initiating the solicitation.

2.     No person or entity who makes a telephone solicitation to a residential subscriber in this state shall knowingly use any method to block or otherwise circumvent any subscriber's use of a caller identification service.

93.     Defendant's Glo and Does 1 through 3 and their telemarketers, and their employees, vendors and agents violated Mo. Rev. Stat. § 407.1001 et seq. by initiating telephone solicitations to wireless and residential telephone subscribers such as Plaintiff and the Class members who registered their respective telephone numbers on the Missouri Do-Not-Call registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the state and federal government.

94.     These individuals requested not to receive calls/texts from Defendant's Glo and Does 1 through 3 and their telemarketers and their employees, vendors, and agents, as set forth in Mo. Rev. Stat. § 407.1076.

95.     Defendant's Glo and Does 1 through 3 and their telemarketers, and their employees, vendors and agents made more than six (6) unsolicited telephone calls/texts to Plaintiff and members of the Class without their prior express consent to receive such calls. Plaintiff and members of the Class never provided any form of consent to receive telephone calls from Defendants and/or Defendants do not have a current record of consent to place telemarketing calls to them.

Electronically Filed - Jefferson - May 09, 2023 - 09:04 AM

96.     Defendant's Glo and Does 1 through 3 and their telemarketers, and their employees, vendors and agents violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Class received more than one telephone call/text within a 12-month period made by or on behalf of the Defendants in violation of Mo. Rev. Stat. § 407.1076, as described above. As a result of Defendants' conduct as alleged herein, Plaintiff and the Class suffered actual damages and, under section Mo. Rev. Stat. § 407.1076, are each entitled, inter alia, to receive up to $5,000 in damages for each such violation.

97.     To the extent Defendant's Glo and Does 1 through 3 and their telemarketers and their employees, vendors and agents misconduct is determined to be willful and knowing, the Court should, pursuant to Mo. Rev. Stat. § 407.1076 treble the amount of statutory damages recoverable by the members of the Class in the amount of $5,000.00 per call.

98.     Plaintiff brings this action as a private attorney general, and to vindicate and enforce an important right affecting the public interest. Plaintiff is therefore entitled to an award of attorneys' fees for bringing this action.

**WHEREFORE**, Plaintiff prays that the Court enter judgment and orders in his favor and against Defendant's Glo and Does 1 through 3 and their telemarketers, and their employees, vendors and agents as follows:

a.     An order certifying the classes, directing that this case proceed as a class action, and appointing Plaintiff and his counsel to represent the classes.

b.     Judgment against Defendant's Glo and Does 1 through 3 and their telemarketers, and their employees, vendors and agents, and in favor of Plaintiff and the other class members in the amount of $5,000 per violation of Mo. Rev. Stat. § 407.1076 as proven at trial, and $5,000.00 per call as treble damages;

Electronically Filed - Jefferson - May 09, 2023 - 09:04 AM

    c.      Equitable and injunctive relief, including injunctions enjoining further violations of Mo. Rev. Stat. § 407.1001 et seq;

    d.      An order granting costs and attorneys' fees; and

    e.      Such other and further relief as this Court may deem appropriate.

### COUNT II
### Violation of the TCPA Against All Defendants
### by Plaintiff Individually and on Behalf of the Robocall and ATDS Classes

99.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint. Plaintiff asserts this claim on behalf of himself and the members of the Robocall and ATDS Class.

100.    The TCPA prohibits certain uses of telecommunication equipment that would interfere with telephone service subscribers' privacy and/or property rights with respect to their telephone. In particular, the TCPA provides that:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a . . . cellular telephone service . . .
> 47 U.S.C. § 27(b)(1)(A).

101.    The TCPA provides telephone service subscribers a private right of action for injunctive relief and statutory damages for violations:

> A person or entity may . . . bring . . . an action based on a violation of [47 U.S.C. § 227(b)) to enjoin such a violation, an action to recovery for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or both . . . If the court finds that the defendant willfully or knowingly violated [47 U.S.C. § 227(b),] the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the [statutory damages available above].
> 47 U.S.C. § 227(b)(3).

Electronically Filed - Jefferson - May 09, 2023 - 09:04 AM

102.    Defendants make outgoing calls/texts to consumers and others in the regular course of their business. Defendant's Glo and Doe's 1 through 3 called and texted Plaintiff and Class members' residential cellular telephone numbers listed on the do not call registry.

103.    Defendant's Glo and Doe's 1 through 3 placed calls to Plaintiff and Class members using predictive dialers. The predictive dialers are an automatic telephone dialing system; no human manually entered the cellular telephone numbers which Defendants called at the time the call was made. Rather, the predictive dialers electronically dialed the Class members' cellular telephones in an automated fashion. Predictive dialers are capable of storing, producing, and dialing any telephone number, and are capable of storing, producing, and dialing telephone numbers using a random or sequential number generator. The predictive dialers otherwise constitute an "automatic telephone dialing system" under the meaning of 47 U.S.C. § 227(a)(1).

104.    Defendant's Glo and Doe's 1 through 3 also utilized artificial and/or prerecorded voice calls to call/text the cellular telephones of Plaintiff and Class Members.

105.    Defendant's Glo and Doe's 1 through 3 do not and did not obtain legally effective prior express consent to call the Class members' cellular telephone numbers.

106.    Defendant's Glo and Doe's 1 through 3 violated 47 U.S.C. § 227(b)(1)(A)(iii) by placing telephone calls and texts to Plaintiff and the other members of the Class that were automatically dialed by Defendants' telephone system and/or used an artificial or prerecorded voice or stored his phone number for predictive dialing; made to a cellular telephone number; and not as the result of the Class member's transaction with Defendants or its agents.

107.    Defendant's Glo and Doe's 1 through 3 violations are willful because Defendants knew that Plaintiff and members of the Class had not given prior express consent to receive calls

Electronically Filed - Jefferson - May 09, 2023 - 09:04 AM

made using an automatic telephone dialing system, artificial, and/or prerecorded voice or automated texts and that Defendants used these methods to call the cell phones of Plaintiff and Class members.

108.    Plaintiff, on his own behalf, and on behalf of the other members of the Robocall and ATDS Class, seeks to recover statutory damages (including treble damages for willful violation of the TCPA), as well as injunctive and equitable relief under 47 U.S.C. § 227(b)(3), against Defendant's Glo and Doe's 1 through 3.

109.    Plaintiff brings this action as a private attorney general, and to vindicate and enforce an important right affecting the public interest. Plaintiff is therefore entitled to an award of attorneys' fees under the Missouri Merchandising Practices Act for bringing this action.

## COUNT III
### Violations of the TCPA Against All Defendants
### by Plaintiff Individually and on Behalf of the DNC Class

110.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint. Plaintiff asserts this claim on behalf of himself and members of the Do Not Call Registry Class.

111.    47 U.S.C. §227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

112.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber

Electronically Filed - Jefferson - May 09, 2023 - 09:04 AM

who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

113.    47 C.F.R. § 64.1200 (e), provides that § 64.1200 (c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

Report and Order at ¶ 167.

114.    Defendant's Glo and Doe's 1 through 3 violated 47 C.F.R. § 64.1200 (c) by initiating telephone solicitations to wireless and residential telephone subscribers such as Plaintiff and the Class members who personally registered their respective telephone numbers on the national Do-Not-Call registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

115.    These individuals requested not to receive calls from Defendant's Glo and Doe's 1 through 3, as set forth in 47 C.F.R. § 64.1200 (d)(3), and the Missouri Do Not Call registry prohibiting both calls and texts.

116.    Defendant's Glo and Doe's 1 through 3 and/or their agents made more than six unsolicited telephone calls/texts to Plaintiff and members of the Class within a 12-month period without their prior express consent to receive such calls. Plaintiff and members of the Class

Electronically Filed - Jefferson - May 09, 2023 - 09:04 AM

never provided any form of consent to receive telephone calls from Defendants and/or Defendants do not have a current record of consent to place telemarketing calls to them.

117.    Defendant's Glo and Doe's 1 through 3 violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Class received more than one telephone call/text within a 12-month period made by or on behalf of the Defendants in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendants' conduct as alleged herein, Plaintiff and the Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, inter alia, to receive up to $1,500 in damages for each such violation of § 64.1200, and an additional $4,500.00 per call in treble damages.

118.    To the extent Defendant's Glo and Doe's 1 through 3's  misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Class in the amount of $6,000.00 per call/text.

119.    Plaintiff brings this action as a private attorney general, and to vindicate and enforce an important right affecting the public interest. Plaintiff is therefore entitled to an award of attorneys' fees for bringing this action.

WHEREFORE, Plaintiff prays that the Court enter judgment and orders in his favor and against Defendant's Glo and Doe's 1 through 3 as follows:

a.    An order certifying the classes, directing that this case proceed as a class action, and appointing Plaintiff and her counsel to represent the classes;

b.    Judgment against Defendants, and in favor of Plaintiff and the other class members in the amount of $1,500 per violation of the TCPA as proven at trial, and $4,500.00 per call as treble damages;

c.     Equitable and injunctive relief, including injunctions enjoining further violations of the TCPA;

d.     An order granting costs and attorneys' fees; and

e.     Such other and further relief as this Court may deem appropriate.

**Count IV**
**VIOLATION OF THE MISSOURI MERCHANDISING**
**PRACTICES ACT**

**COMES NOW**, Plaintiff and for his fourth cause of action against Defendant's GLO and Does 1 through 3 telemarketers, and/or its affiliates, agents, and/or other persons or entities acting on Defendants behalf and its employees and/or agents their agents, vendors and other unknown telemarketers on their behalf, states:

120.    Plaintiff realleges and incorporates the above paragraphs as if fully set forth herein.

121.    Section 407.020, RSMo provides in pertinent part:

The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale ***or advertisement*** of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section 407.453, in **or from** the state of Missouri, is declared to be an unlawful practice… Any act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale, advertisement, or solicitation.

122.    Section 407.025.1 provides in pertinent part:

Any person who purchases or leases merchandise primarily for any personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020 may bring a  private civil action in either the circuit court of the county in which the seller or lessor resides or in which the transaction complained of took place, to recover actual damages. The court may, in its discretion, award punitive damages and may award to the prevailing part attorney's fees, based on the amount of time reasonably expended, and may provide such equitable relief as it deems necessary or proper.

123.    Section 407.010(4) defines "merchandise" as any objects, wares, goods, commodities intangibles, real estate, or services. This definition of merchandise includes the services advertised and sold by Defendant's Glo and Does 1 through 3 and its employees, vendors, and/or agents.

124.    Pursuant to authority granted it in §407.145, the Attorney General has promulgated rules explaining and defining terms utilized in §407.020 of the Merchandising Practices Act. Said rules are contained in the Missouri Code of State (hereinafter "CSR"). The rules relevant to the Merchandising Practices Act allegations herein include, but are not limited to, the provisions of the CSR.

125.    15 CSR 60-8.010 provides the following definitions:

(1)(B) Consumer shall include any person (as defined in section 407.010.5RSMo) who purchases, may purchase, or is solicited for purchase of merchandise. (1)(E) Good faith shall mean honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade.

126.    15 CSR 60-8.020 provides that:

An unfair practice is any practice which-

(A) Either-

1. Offends any public policy as it has been established by the Constitution, statutes or common law of this state, or by the Federal Trade Commission, or its interpretive decisions; or

2. Is unethical, oppressive, or unscrupulous; and

(B) Presents a risk of, or causes, substantial injury to consumers.

127.    15 CSR 60-8.040 provides that:

(1) *It is an unfair practice for any person in connection **with the advertisement*** or sale of merchandise to violate the duty of good faith in solicitation, negotiation and performance, or in any manner fail to act in good faith.

128.    15 CSR 60-8.090 provides that:

(1) It is an unfair practice for any person in connection with the advertisement or sale of merchandise to engage in any method, use or practice which-
    (A) **Violates state or federal law intended to protect the public**; and
    (B) Presents a risk of or causes substantial injury to consumers.

129.    15 CSR 60-9.010 provides that:

(1)(C) Material fact is any fact which a reasonable consumer would likely consider to be important in making a purchasing decision, or which would be likely to induce a person to manifest his/her assent, or which the seller knows would be likely to induce a particular consumer to manifest his/her assent, or which would belikely to induce a reasonable consumer to act, respond or change his/her behavior in any substantial manner.

130.    15 CSR 60-9.020 provides that:

(1) Deception is any method, act, use, practice, advertisement or solicitation that has the tendency or capacity to mislead, deceive or cheat, or that tends to create a false impression.

(2) Reliance, actual deception, knowledge of deception, intent to mislead or deceive, or any other culpable, mental state such as recklessness or negligence negligence are not elements of deception as used in section 407.020.1, RSMo… _**Deception may occur in securing the first contact with a consumer and is not cured even though the true facts or nature of the advertisement of offer for sale are subsequently disclosed**_. (Our _emphasis_)

(1)(B) Consumer shall include any person (as defined in section 407.010.5RSMo) who purchases, may purchase, or is solicited for purchase of merchandise. (1)(E) Good faith shall mean honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade.

131.    15CSR 60-9.030 provides that:

(1) It is deception for any person in any advertisement or sales presentation to use any format which because of its overall appearance had the tendency or capacity to mislead consumers.

132.    15 CSR 60-9.060 provides that:

(1) False promise is any statement or representation which is false or misleading as the maker's intention or ability to perform a promise, or likelihood the promise will be performed.
(2) Reliance and injury are not elements of false promise as used in section 407.20.1, RSMo.

Electronically Filed - Jefferson - May 09, 2023 - 09:04 AM

133.     15 CSR 60-9.070 provides that:

(1) A misrepresentation is an assertion that is not in accord with the facts.
(2) Reliance, knowledge that the assertion is false or misleading, intent to defraud, intent that the consumer rely upon the assertion, or any other culpable [capable in origin] mental state such a recklessness or negligence, are not elements of misrepresentation as used in section 407.020.1.

134.     15 CSR 60-9.080 provides that:

(1) It is a misrepresentation for any person in connection with the advertisement or sale of merchandise to omit to state a material fact necessary in order to make statements made in light of the circumstances under which they are made, not misleading.

135.     15 CSR 60-9.110 provides that:

(1) Concealment of a material fact is any method, act, use or practice which operates to hide or keep material facts from consumers.
(2) Suppression of a material fact is any method, act, use of practice which is likely to curtail or reduce the ability of consumers to take notice of material facts which are stated.
(3) Omission of a material fact is any failure by a person to disclose material facts know to him/her, or upon reasonable inquiry would be known to him/her.
(4) Reliance and intent that others rely upon such concealment, suppression or omission are not elements of concealment, suppression or omission as used in section 407.020.1.

136.     Pursuant to § 407.020 RSMo (Missouri Merchandising Practices Act), it is an unlawful practice to use deception, fraud, false pretense, false promise, misrepresentation, or unfair practice, or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise in trade or commerce.

137.     Defendant's Glo and Does 1 through 3, and its employees and/or agents, used deception, fraud, false pretense, false promise, misrepresentation, or unfair practice, or concealed,

Electronically Filed - Jefferson - May 09, 2023 - 09:04 AM

suppressed, or omitted a material facts in connection with the unwanted solicitations made to his number listed on the do not call registry and car sales by engaging in the following:

a.      Defendant's Glo and Does 1 through 3, and its employees and/or agents and other unknown telemarketers acting on their behalf, by and through the aid and assistance of telemarketers, as created and marketed by these Defendants through the aid, assistance and use of predictive dialers, robo-calls and ATDS dialing systems owned and operated by the collective Defendant's to facilitate unsolicited calls to the DNC, MDNC, and ATDS classes, with the specific intent to deceive persons on the no call list to believe that they would not receive telemarketing calls and were merely being invited to enter their credit card to pay an existing bill for services.

b.      By falsely and deceptively misidentifying both the caller ID functions and lead paradigm, Defendant's Glo and Defendant's Doe 1 through 3, and their telemarketers identity and their company origin to deliberately misrepresent that they were telemarketers acting as an agent and/or vendor on Defendant's Glo and its employees and/or agents and other unknown telemarketers acting on their behalf in an effort to mislead the Plaintiff into the disclosure of his personal and private information, when he might not otherwise have considered such disclosure to a third party and/or vendor.

c.      By deceptively and deliberately concealing company identities throughout the myriad calls to dissuade consumers and persons on the federal and Missouri State no call lists from pursuing lawful claims under the TCPA, MMPA and Missouri no call registry for knowingly deceptive marketing practices.

Electronically Filed - Jefferson - May 09, 2023 - 09:04 AM

d.      By then having a meeting of the minds and agreeing to illegally provide Plaintiffs phone number, thereafter, providing it to countless other telemarketers so they could illegally call or text Plaintiff's phone, clearly registered on the no call lists, although Plaintiff did not have a relationship with those Defendants and did not provide those Defendants with written permission to call him

e.      By badgering the Plaintiff with myriad unwanted telemarketer solicitations by phone and text for Defendant Glo's telemarketers services, when all he sought, and believed he would receive, was an anonymous right to privacy and seclusion.

f.      For Defendant's Glo to hire other marketing Defendants, who they knew or reasonably should have known were providing restricted numbers and making calls to the 244.3 million people listed on the federal and Missouri State do not call registry in an effort to conceal the identity of the telemarketers, and provide the Defendants with a false and misleading façade of plausible deniability, when they are 100% culpable and funded the illegal calls and texts to the Plaintiff and others similarly situated on the federal no call registry.

g.      By "spoofing" area codes  and utilizing Voip numbers to show as a local area code to increase the likelihood that the Plaintiff would believe that it was a local call for legitimate purposes, instead of an unsolicited marketing or solicitation call from Defendant Glo and its telemarketers and its employees and/or agents, vendors and other unknown telemarketers acting on their behalf by and through the aid and assistance of the robo-call and ATDS dialing systems.

h.      As a direct result of the deception, false pretense, misrepresentation, unfair and fraudulent practices, concealment, and omission of these material facts of Defendant's

Electronically Filed - Jefferson - May 09, 2023 - 09:04 AM

Glo and their telemarketers and its employees and/or agents and other unknown telemarketers acting on their behalf, by and through the aid and assistance of the robo-call and ATDS dialing systems, the Plaintiff has suffered continuing harassment, humiliation, loss of sleep, depression, mental fatigue, a reprimand from his employer and loss of thousands of dollars in bonus opportunities, injuries to his privacy rights, intrusion upon seclusion, his mental health and wellbeing, inability to use his phone and other damages, caused frustration, harassment and annoyance, thereby warranting treble and punitive damages.

i.      By continuing to repeatedly text the Plaintiff after being informed that he was on the Missouri and Federal No Call registries, and deliberately violating his protections under both those state and federal Acts and statutes even after being advised in writing that he demanded the communications cease forthwith.

j.      By depriving the Plaintiff of the temporary use of his phone/utility, and causing wear and tear on his equipment and the degradation of his battery life and causing him to incur provider fees for the calls.

138.    Plaintiff registered his number on the no call list to protect his privacy, solace, and seclusion, and for that of his family and Defendant's Glo and Does 1 through 3, and their telemarketers and its employees and/or agents their agents, vendors and other unknown telemarketers on their behalf, have deliberately and deceptively invaded the province of and violated his right to privacy deliberately causing him to be harassed and annoyed, violated his right to seclusion, as well as other physical injuries stated herein.

Electronically Filed - Jefferson - May 09, 2023 - 09:04 AM

139.    Defendant's Glo and Does 1 through 3, and their telemarketers and its employees and/or agents their agents, vendors and other unknown telemarketers on their behalf, actions constitute a pattern and practice of deceptive and unfair conduct.  Defendant's tactics were designed to exploit consumer fears, violate federal and state law, and to deceptively uncover consumers private information so the Defendants could conduct unwanted and unwarranted solicitation calls and induce consumers to provide substantial payments for Defendant's services.

140.    Section 407.025 RSMO gives the Plaintiff the right to recover actual damages, Punitive damages, and reasonable attorney's fees and costs.

141.    Defendant's Glo and Does 1 through 3and their telemarketers and its employees and/or agents their agents, vendors and other unknown telemarketers on their behalf's use of fraud, deception, false pretense, false promise, misrepresentation, or unfair practice, and/or of Defendant's concealment, suppression, or omission of a material fact in connection with its sale of the services, Plaintiff has suffered an ascertainable loss of money or property, and privacy and seclusion in an amount greater than $75,000.00.

WHEREFORE, Plaintiff prays this Court enter judgment against Defendant's Glo and Does 1 through 3 and their telemarketers and its employees and/or agents their agents, vendors and other unknown telemarketers on their behalf, awarding him actual damages that is fair and reasonable, plus punitive damages in an amount that will fairly and reasonably punish Defendants for their deliberate misconduct and be expected to deter others, reasonable attorney's fees and costs, and such further relief this Court deems just and proper.

## COUNT V
## Defendants' Direct or Vicarious Liability

Electronically Filed - Jefferson - May 09, 2023 - 09:04 AM

COMES NOW, Plaintiff and for his fifth cause of action against Defendant's Glo and Does 1 through 3 and their telemarketers and its employees and/or their agents, vendors and other unknown telemarketers on their behalf, states:

142.    Plaintiff reasserts and incorporates fully herein by reference each of the above paragraphs as though fully set forth herein.

143.    For 25 years now the FCC has made clear that "the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the TeL Consumer Prot. Act of 1991,* 10 F.C.C. Rcd. 12391, 12397 ¶ 13 (1995).

144.    In 2013 the FCC explained again in detail that a defendant "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC,* 28 F.C.C. Rcd. 6574 (2013). Both actual and apparent authority, and ratification, can be a basis for a finding of vicarious liability. *Mohon v. Agentra,* 400 F.Supp.3d 1189, 1226 (D. NM 2019).

145.    The FCC has instructed that defendants may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were ***judgment proof, unidentifiable, or located outside the United States, as is often the case.*** Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of `independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

Electronically Filed - Jefferson - May 09, 2023 - 09:04 AM

May 2013 FCC Ruling, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

146.     The FCC has rejected a narrow view of TCPA liability, including the assertion that liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Mohon v. Agentra,* 400 F.Supp.3d 1189, 1226 (D. NM 2019).

147.     A direct connection exists between all Defendants herein and the calls complained of by Plaintiff because the calls were directly made on behalf Defendant's Glo and Does 1 through 3 and their telemarketers so they could all profit from a common enterprise in which they all substantially participated.

148.     "As the FTC has explained in its Compliance Guide, `taking deliberate steps to ensure one's own ignorance of a seller or telemarketer's Rule violations is an ineffective strategy to avoid liability.'" *FTC v. Chapman,* 714 F.3d 1211, 1216-1219 (l0th Cir. 2013).

149.     Defendant's Glo and Does 1 through 3 and their telemarketers, and their independent contracting agents are directly liable and responsible for the phone calls at issue because Defendant's Glo, and Does 1 through 3 and their telemarketers actually made or initiated the calls to Plaintiffs or they substantially participated and Registered Agent Eric Cavett threatened the Plaintiff with criminal and/or punitive sanctions if he filed suit and sought the vindication for the Defendants illegal calls/texts to chill Plaintiff's first Amendment rights to access to the Court.

150.     Defendant's Glo and Does 1 through 3 and their telemarketers are vicariously liable for the calls complained of by Plaintiff herein because they:

a)      authorized or caused Defendant's Does 1 through 3 to initiate the calls/texts  or initiated the calls and texts themselves;

b)      directly or indirectly controlled the persons who actually made or initiated the calls;

c)      allowed the telemarketers and independent agents access to information and operating systems within Defendants' control for the purpose of selling goods and services, without which they would not be able to sell their services using robocalling and/or direct dialing;

d)      allowed the telemarketers and independent contracting agents to enter or provide consumer information into Defendants' sales or operational systems;

e)      approved, wrote, reviewed or participated in developing the telemarketing sales scripts and automated text messages;

f)      Defendants reasonably should have known or consciously avoided knowing that the actual telemarketers were violating the law and Defendants failed to take effective steps within their power to require compliance; or[6]

g)      Defendant's Glo and Does 1 through 3 gave substantial assistance or support to Defendant's Doe 1 through 5, and each other while knowing, consciously avoiding knowing, or being recklessly indifferent to the fact that John and Jane Does were engaged in acts or practices that violated the TCPA, MDNC, and/or the MMPA.

h.)      Defendant Glo hired the services of registered agent Eric Cavett to threaten the Plaintiff with criminal and punitive sanctions in order to chill his right to access this Court to seek vindication of the transgressions of his rights and protections under the MMPA, MDNC, and DNC.

---

[6] This is particularly glaring where the Plaintiff continued to receive these texts from the Defendant after their attorney and registered agent Eric Cavett was served with a copy of the potential litigation and advised of the illegal calls/texts, yet chose to threaten the Plaintiff in hopes of chilling his right to access the Court for the illegal calls/texts.

Electronically Filed - Jefferson - May 09, 2023 - 09:04 AM

i.)     Defendant Glo's registered agent Eric Cavett then committed the overt act of actually threatening the Plaintiff in a series of letters in an effort to dissuade, chill, or hinder his rights under the above acts and statutes to seek vindication for Defendant Glo and their telemarketers illegal calls/texts to the Plaintiff private residential telephone number clearly listed personally by the Plaintiff on the MDNC and Federal DNC's.

j.)     After Cavett was served via certified mail with a proposed copy of this litigation, Defendant Glo and its agent, employees and vendors repeatedly texted the Plaintiff despite his demanding in texts that these illegal communications cease.

151.   Defendant's Glo and Does 1 through 3 and their telemarketers apparently had authority to engage in the autodialing, texting and robocalling at issue herein because after Plaintiff patiently read the scripted sales pitch and clicked the link, the Defendants all would have profited.

152.   Defendant's Glo and Does 1 through 3 and their telemarketers ratified the robocalls, ATDS, and direct dialing of these DNC, MMPA, and MDNC violations to Plaintiff described above because they accepted and intended the benefits to them of the calls while knowing or consciously avoiding knowing their telemarketer-agents were robocalling and automated texting and direct texting cell phones and phone numbers listed on the Federal and Missouri State Registry without complying with the Registry and without prior express written consent of the robocalled, called, and texted consumers.

WHEREFORE, Plaintiff prays for entry of judgment against Defendant's Glo and Does 1 through 3 and their telemarketers, and their independent contracting agents for his statutory, actual and/or treble damages sufficient in size to set an example and deter in the future the conduct complained of by Defendants or others as well as judgement against Glo Tanning Inc.,

in the amount of $50,000.00 for their vicarious liability and ratification of the illegal texts to the Plaintiff. Plaintiff prays for such other and further relief as the court finds proper. Plaintiff requests an award of his attorney fees and costs.

Respectfully submitted,

/s/Edwin V. Butler, Esquire
Edwin V. Butler Mo. 32489
Attorney At Law
Butler Law Group, LLC
1650 Des Peres Rd., Suite 220
St. Louis, MO 63131
edbutler@butlerlawstl.com
(314) 504-0001

Attorney for the Plaintiff

This 9th day of May, 2023.